# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| "LILY," "SARAH," and "PIA",<br><br>               Plaintiffs,<br><br>v.<br><br>CARSTEN IGOR ROSENOW,<br>a/k/a CARLOS SENTA,<br><br>               Defendant. | Case No.: 23-cv-00644-WQH-DEB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are: (1) the Motion for Summary Judgment filed by Plaintiffs "Lily," "Sarah," and "Pia," (ECF No. 75); (2) the Motion for Summary Judgment filed by Defendant Carsten Igor Rosenow (ECF No. 89); (3) the Motion to Postpone Consideration of Plaintiffs' Summary Judgment Motion or, In the Alternative, for Leave to Supplement Response filed by Defendant (ECF No. 80); (4) the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant (ECF No. 67); (5) the Motion for Judicial Notice in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant (ECF No. 68); (6) the Motion for Leave to File Oversized Motion to Dismiss filed by Defendant (ECF No. 69); and (7) the Motion to File Document Under Seal in Support of Motion to Dismiss filed by Defendant (ECF No. 70).

## I.    PROCEDURAL BACKGROUND

On April 7, 2023, Plaintiffs "Lily," "Sarah," and Jane Roe as next friend for "Pia" (collectively, "Plaintiffs") initiated this action by filing a Complaint against Defendant Carsten Igor Rosenow ("Defendant"), who is proceeding pro se in this action. (ECF No. 1.) On July 13, 2023, Plaintiffs filed a First Amended Complaint ("FAC"). (ECF No. 19.)

Defendant filed a Motion to Dismiss the Complaint, Partial Summary Dismissal and Affirmative Plea (ECF No. 21) and a Motion to Dismiss the FAC Complaint, Partial Summary Dismissal and Affirmative Plea (ECF No. 23) (collectively, the "Motions to Dismiss the FAC") on September 14, 2023 and October 16, 2023, respectively. On September 20, 2024, the Court issued an Order denying Defendant's Motions to Dismiss the FAC. (ECF No. 27.) On October 17, 2024, Defendant filed an Answer. (ECF No. 28.)

On November 25, 2024, Defendant filed a Renewed Motion to Dismiss the FAC. (ECF No. 38.) On May 8, 2025, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. (ECF No. 54.) On July 7, 2025, the Court issued an Order granting the Motion for Leave to File Second Amended Complaint (ECF No. 54) and denying the Renewed Motion to Dismiss the FAC (ECF No. 38) as moot. (ECF No. 64.)

On July 8, 2025, Plaintiffs[1] filed the Second Amended Complaint ("SAC"), which is the operative pleading. (ECF No. 66.) Plaintiffs seek liquidated damages pursuant to 18 U.S.C. § 2255, which provides a civil remedy for victims against individuals convicted of certain offenses involving the exploitation of children.

On July 14, 2025, Defendant filed a Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss the SAC"). (ECF No. 67.) The same day, Defendant filed a Motion for Judicial Notice in Support of the Motion to Dismiss the SAC (ECF No. 68), a Motion for Leave to File Oversized Motion to Dismiss (ECF No. 69), and a Motion to File Documents Under Seal in Support of Motion to Dismiss (ECF No. 70). On August 4,

---

[1] The SAC and Plaintiffs' subsequent filings name "Pia" as a Plaintiff in her own right because she "reached the age of majority and no longer requires a next friend." (ECF No. 54 at 3.)

2025, Plaintiffs filed a Response in Opposition to the foregoing motions (ECF Nos. 67–70). (ECF No. 72.) On August 8, 2025, Defendant filed a Reply. (ECF No. 81.) On August 11, 2025, Defendant filed a Supplemental Memorandum in Support of Defendant's Motion to Dismiss the SAC Based on Judicial Estoppel. (ECF No. 82.)

On August 4, 2025, Plaintiffs filed the pending Motion for Summary Judgment ("Plaintiffs' MSJ"). (ECF No. 75.) On August 7, 2025, Defendant filed a Motion Under Rule 56(d) to Postpone Consideration of Plaintiffs' Summary Judgment Motion or, in the Alternative, for Leave to Supplement Response. (ECF No. 80.) On August 27, 2025, Defendant filed an Opposition to Plaintiffs' MSJ and Request for Relief Under Rule 56(d). (ECF No. 90.) The same day, Defendant filed a Response to Plaintiffs' Separate Statement of Undisputed Material Facts in Support of Opposition to Plaintiffs' MSJ. (ECF No. 91.) On September 5, 2025, Plaintiffs filed a Reply. (ECF No. 93.)

On August 22, 2025, Defendant filed the pending Motion for Summary Judgment ("Defendant's MSJ"). (ECF No. 89.) On September 10, 2025, Defendant filed a Supplement to Defendant's MSJ. (ECF No. 99.) On September 12, 2025, Plaintiffs filed an Opposition to Defendant's MSJ. (ECF No. 100.) On September 22, 2025, Defendant filed a Reply. (ECF No. 101.) On September 24, 2025, Plaintiffs filed a Response in Opposition to Defendant's Supplement to Defendant's MSJ. (ECF No. 102.) On September 29, 2025, Defendant filed a Reply. (ECF No. 104.) On November 17, 2025, Defendant filed a Second Supplement to Defendant's MSJ. (ECF No. 114.) On November 28, 2025, Defendant filed a Supplemental Submission Regarding Plaintiffs' Privilege Assertion and Privity ("November 28 Supplement"). (ECF No. 118.) On December 9, 2025, Plaintiffs filed an Objection to and Motion to Strike Defendant's November 28 Supplement. (ECF No. 120.) On December 15, 2025, Defendant filed an Opposition to Plaintiffs' Objection. (ECF No. 122.)

On December 12, 2025, the Court issued an Order denying Plaintiffs' Objection (ECF No. 120) to Defendant's Supplements. (ECF No. 121.) The Court stated that it would

23-cv-00644-WQH-DEB

not allow any further filings relating to the pending MSJs, absent a showing of good cause. *Id.* at 3.

II.    **RELEVANT FACTS**[2]

On August 30, 2019, a jury found Defendant guilty of attempted sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(c) and (e) and possession of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (Criminal ECF No. 198.)[3]

On February 6, 2020, the Government filed a Sentencing Memorandum seeking monetary restitution for three victims, who are now the Plaintiffs in this civil action. (Criminal ECF No. 229.) The Government attached a Child Identification Report from the National Center for Missing and Exploited Children ("NCMEC") identifying the child sex abuse material ("CSAM")[4] "series" and law enforcement points of contact for the files recovered from Defendant's devices. (Criminal ECF No. 229-1.)

On February 18, 2020, Defendant filed a Brief in Opposition to Restitution contending, *inter alia*, that he should not have to pay restitution to Plaintiffs because "the jury verdict was not based on any of the[] three files" depicting the victims and "the

---

[2] The parties request that the Court take judicial notice of the docket and various filings in the related criminal case against Defendant before this Court, *United States v. Rosenow* (3:17-cr-03430-WQH-1); on appeal to the United States Court of Appeals for the Ninth Circuit, *United States v. Rosenow* (22-50052); and on petition for writ of certiorari to the United States Supreme Court, *Rosenow v. United States* (22-609). (*See, e.g.*, ECF No. 76 at 2–5; ECF No. 92 at 2.) Under Federal Rule of Evidence 201, courts may take judicial notice of "matters of public record," such as court filings, because such records "are readily verifiable." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court grants the parties' request for judicial notice of all the publicly filed documents in the related criminal case.

[3] The Court uses "Criminal ECF" to refer to filings on the docket in the related criminal case before this Court, *United States v. Rosenow*, 3:17-cr-03430-WQH-1. "ECF" refers to the docket filings in this civil action.

[4] The Court uses the terms "child pornography" and "CSAM" interchangeably, although "child pornography" remains the legal term.

government has not shown that Mr. Rosenow viewed these three files." (Criminal ECF No. 234 at 2.)

On February 24, 2020, the Government filed a Response to Defendant's Brief in Opposition to Restitution. (Criminal ECF No. 237.) The Government stated:

> Each of these victims have depictions located on two separate devices Defendant had in his possession. The first device is a black and silver thumb drive identified by the FBI as QSD 15. The second device is a black thumb drive identified by the FBI as QSD 16[.] Both thumb drives were located in Defendant's home, specifically in the office area. Additionally, Defendant, in the Stipulation of Facts (Gov. Trial Ex. 47) admitted to possessing the black thumb drive. Of note, the black and silver thumb drive was recovered in the same office area right next to the black thumb drive. Gov. Trial Ex. 32. As a result of his conviction of the possession count, Defendant agreed to forfeit both devices— identified as numbers 10 and 11—in the Stipulation Regarding Forfeiture. Gov. Trial Ex. 48 . . .
>
> The depiction of Pia[] once resided on the black and silver thumb drive, but as of the date of the forensic examination, the image is no longer accessible to the user. The depiction of Vicky exists on the black thumb drive in a folder called "jaysa" and is accessible to the user. The depiction of Marineland exists on the black thumb drive in a folder called "NAKED PICS" and is accessible to the user.

*Id.* at 2–3.

The Government contended that "the evidence clearly establishes that Defendant was in possession of devices that contained visual depictions of each of the minors who are seeking restitution . . . Defendant was convicted of possession of these devices and even agreed that they were forfeitable as a result of that conviction." *Id.* at 3. The Government further contended that "[i]t is undisputed that the three visual depictions are located on the two thumb drives . . . The conviction of the crime of possession of devices containing the visual depictions is the trigger for restitution." *Id.* at 3–4.

On February 26, 2020, this Court sentenced Defendant to a term of imprisonment of 300 months, followed by lifetime supervised release. (Criminal ECF No. 238.) At sentencing, the Court ordered restitution in the amount of $4,000 to each of the three victims in the criminal case, who are now the Plaintiffs in this civil action. *Id.*

23-cv-00644-WQH-DEB

On February 27, 2020, the Court issued an Order explaining the rationale for its restitution decision ("Restitution Order"). (Criminal ECF No. 240.) The Court found that "[e]ach of the individuals seeking restitution were identified in material possessed by Defendant" and "each individual is a 'victim' entitled to restitution under [18 U.S.C.] § 2259." *Id.* at 3. Additionally, the Court found that "[e]ach of the victims have suffered serious harm from the trade of their images and the Defendant is responsible for harms proximately caused to the victims having participated in the trade of their images." *Id.* at 5.

On March 3, 2020, the Court entered judgment against Defendant and identified the restitution payees as "Pia" of the "Sweet Sugar" series, "Lily" of the "Vicky" series, and "Sarah" of the "Marineland" series—the Plaintiffs in this civil action. (Criminal ECF No. 247 at 8.)

Defendant appealed his conviction, sentence, and the Restitution Order (Criminal ECF No. 240) to the Ninth Circuit on March 4, 2020. (Criminal ECF No. 248.) In his Opening Brief in the Ninth Circuit, Defendant did not make any arguments regarding restitution and instead challenged his underlying conviction. (ECF No. 76-12.) On April 27, 2022, the Ninth Circuit affirmed Defendant's conviction and sentence. (ECF No. 76-13.) On August 4, 2022, Defendant filed a Petition for a Writ of Certiorari in the United States Supreme Court that did not raise the issue of restitution. (ECF No. 76-14.) On February 21, 2023, the Supreme Court denied certiorari. *Rosenow v. United States*, 143 S. Ct. 786 (2023) (mem.).

On April 7, 2023, Plaintiffs initiated the instant civil action, each seeking $150,000 in liquidated damages pursuant to 18 U.S.C. § 2255(a). (ECF No. 1.)

On December 18, 2024, Defendant filed a Motion for Reconsideration of Restitution Order in his criminal matter. (Criminal ECF No. 298.) On May 15, 2025, the Court issued an Order denying Defendant's Motion for Reconsideration of Restitution Order. (Criminal ECF No. 305.)

23-cv-00644-WQH-DEB

Plaintiffs bring one claim pursuant to 18 U.S.C. § 2255(a). (SAC.) Plaintiffs each seek liquidated damages in the amount of $150,000, for a combined total of $450,000; reasonable attorney's fees; and pre-judgment and post-judgment interest. *Id.* at 5.

## III.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542–43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.").

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex*

*Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256. However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

"[W]hen parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV.    PLAINTIFFS' MSJ

Plaintiffs seek summary judgment on their sole cause of action against Defendant: $150,000 each in liquidated damages under 18 U.S.C. § 2255(a). To prevail on a § 2255(a) claim, a plaintiff must prove that (1) the defendant violated one of an enumerated list of criminal offenses involving the exploitation of children, (2) the plaintiff was a "victim" of the defendant's violation while she was a minor, and (3) the plaintiff suffered personal injury as a result of the violation. 18 U.S.C. § 2255(a).

### A. Plaintiffs' Ability to Bring a Civil Claim Under 18 U.S.C. § 2255(a)

As a threshold matter, the Court assesses whether Plaintiffs may bring a subsequent civil action against Defendant after the Court previously ordered Defendant to pay Plaintiffs restitution in the related criminal matter. Defendant contends that the doctrines

23-cv-00644-WQH-DEB

of res judicata (also known as claim preclusion) and collateral estoppel (also known as issue preclusion) bar Plaintiffs from bringing this civil action. (*See, e.g.*, ECF No. 89-2 at 16.) Defendant contends that allowing Plaintiffs to sue him under 18 U.S.C. § 2255(a) would permit them to "re-litigate the very issues already determined in their favor" in the related criminal restitution proceedings and "prejudice Defendant, who reasonably relied on the restitution order's finality." (ECF No. 89-2 at 16.)

18 U.S.C. § 2255(a) provides a civil private right of action for victims of child exploitation offenses to obtain damages. The statute states:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).

### 1. Issue Preclusion

"Issue preclusion, or collateral estoppel, 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Garity v. APWU*, 828 F.3d 848, 865 n.8 (9th Cir. 2016) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "Under both California and federal law," issue preclusion applies where it is established that: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 995 (9th Cir. 2000) (citations omitted). The Ninth Circuit has also applied the following four-part test and determined that issue preclusion applies when: "(1) the issue at stake was

23-cv-00644-WQH-DEB

identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021) (citing *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019)); *see also IQVIA Inc. v. MedImpact Healthcare Systems, Inc.*, No. 21-CV-2081-GPC-DEB, 2022 WL 1125779, at *7 (S.D. Cal. Apr. 15, 2022) (applying both the three-part and four-part tests).

Here, the issues in Defendant's criminal case and this civil action are identical: whether Defendant violated § 2252(a)(4)(B), whether Plaintiffs were "victims" of Defendant's violation while they were minors, and whether Plaintiffs suffered personal injury as a result of Defendant's violation. *See* Criminal ECF No. 240; 18 U.S.C. § 2252(a). Defendant's restitution proceedings ended with a final judgment on the merits. (Criminal ECF No. 247.) Defendant attempts to assert collateral estoppel against Plaintiffs by arguing that the doctrine precludes them from bringing this civil action. (*See, e.g.*, ECF No. 89-2 at 2.) To determine whether issue preclusion bars this civil action, the Court must assess whether Plaintiffs were parties or in privity with a party at Defendant's criminal restitution proceedings. *See Hydranautics*, 204 F.3d at 995.

In the child pornography context, multiple courts have found that the doctrine of issue preclusion does not foreclose victims from bringing § 2255(a) civil suits after they have already received restitution in prior criminal proceedings based on violations of the same offense. *Doe v. Hesketh*, 828 F.3d 159, 169 (3d Cir. 2016) ("Congress not only contemplated that a victim who had received restitution could file a subsequent civil action, [under 18 U.S.C. § 2255(a)] but also provided procedures for that very situation."); *see also "Amy" v. Curtis*, No. 19-cv-02184-PJH, 2020 WL 6271046, at *7 (N.D. Cal. Oct. 26, 2020) ("[A]ny restitution received by plaintiffs . . . does not bar them from pursuing and recovering a § 2255 claim for violation of the same predicate statute."); *Doe ex rel. Jessy v. Dinkfeld*, No. 2:19-cv-01554-ODW (SSx), 2019 WL 3340690, at *4 (C.D. Cal. July 25, 2019) (same); *cf. Rasmussen v. Hickey*, No. 20cv411-LAB(JLB), 2021 WL 5827108, at *5

23-cv-00644-WQH-DEB

(S.D. Cal. July 21, 2021) (awarding victim who received criminal restitution liquidated damages under § 2255(a) in subsequent civil action); *Cara v. Salley*, No. 2:23-cv-00803-LK, 2024 WL 1859854, at *3 (W.D. Wash. Apr. 29, 2024) (same).

For instance, in *Hesketh*, the Third Circuit found that a victim of child pornography offenses could sue under § 2255(a) after receiving a criminal restitution award because she "was neither a party to [the defendant's] prior criminal proceeding nor in privity with a party . . . ." 828 F.3d at 171. The Third Circuit held that the plaintiff was not in privity with the government during the prior criminal proceeding because "[t]he interests of a victim and the government in a restitution determination are not sufficiently similar for a finding of privity . . . A victim's interest in the context of restitution is undoubtedly to achieve the maximum amount of compensation for herself permissible under the law[,]" while the government's interests "are necessarily affected by its responsibility to represent the interest of society as a whole." *Id.* at 172 (quotations and citations omitted).

The Court finds the Third Circuit's reasoning persuasive. In Defendant's criminal proceedings, Plaintiffs requested restitution awards in the following amounts: $15,000 for Sarah, $10,000 for Lily, and $5,000 for Pia. (ECF No. 72 at 13; ECF No. 89-1 ¶ 5.) The U.S. Attorney's Office "urg[ed] Plaintiffs to accept a lower restitution award . . . in an effort to resolve the restitution issues without a hearing." (ECF No. 72 at 13; ECF No. 89-1 ¶ 6.) Plaintiffs agreed to accept lower restitution amounts and the government requested that the Court award each Plaintiff "between $5,000 and $3,000 in restitution." (ECF No. 72 at 13; ECF No. 89-1 ¶¶ 7–8.) These facts accord with *Hesketh*'s reasoning that victims and the government have diverging restitution interests—victims seek to obtain the most money they can, while the government must consider the public's interests in justice and conserving government and judicial resources. The Court follows *Hesketh* and concludes that Plaintiffs and the government were not in privity during Defendant's restitution proceedings.

This Court already reached the same conclusion in its September 20, 2024 Order denying Defendant's Motion to Dismiss the FAC. (ECF No. 27.) The Court found that

23-cv-00644-WQH-DEB

"[b]ecause the interests of Plaintiffs and the United States with respect to the restitution order are not sufficiently similar, the parties are not in privity." *Id.* at 9.

Because Plaintiffs and the government were not in privity, the Court finds that the doctrine of issue preclusion does not prevent Plaintiffs from obtaining summary judgment on their § 2255(a) claim in this civil action.

### 2. Claim Preclusion

Defendant contends that res judicata bars Plaintiffs' § 2255(a) claims because "they arise from the same nucleus of operative facts adjudicated in the prior criminal proceeding—namely, the proximate harm caused by Defendant's possession of images involving each Plaintiff." (ECF No. 89-2 at 20.) Defendant contends that Plaintiffs had an opportunity in the prior criminal proceeding "to obtain compensation functionally equivalent to the liquidated damages they now pursue." *Id.* at 21. Specifically, Defendant contends that Plaintiffs' failure to pursue other remedies to obtain more money during the restitution proceedings, such as a writ of mandamus under 18 U.S.C. § 3771(d)(3) or later relief under 18 U.S.C. § 3664(d)(5), "confirms that the restitution process provided a full and fair opportunity to litigate." *Id.* at 21–22.

Res judicata, or claim preclusion, "provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) an identity or privity between the parties.'" *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).

Plaintiffs were not parties to the prior criminal proceedings. As discussed, no privity existed between Plaintiffs and the government in the restitution proceedings. Additionally, the civil and criminal proceedings do not involve the same claim because "an order of criminal restitution is not equivalent to a judicial determination of civil damages." *Eli Lilly and Co. v. Gitmed*, No. 1:16–cv–00178–DAD–SAB, 2017 WL 1740132, at *3 (E.D. Cal.

May 4, 2017); *see also* ECF No. 27 at 10. The Court finds that the doctrine of claim preclusion does not bar Plaintiffs from recovering liquidated damages in this civil action.

## B. Violation of Predicate Offense

To be held liable under 18 U.S.C. § 2255(a), the defendant must have violated one of a list of child exploitation offenses. 18 U.S.C. § 2255(a). Defendant was convicted of one such offense: possession of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (Criminal ECF No. 247.)

## C. Plaintiffs' Victim Status

To recover liquidated damages under § 2255(a), Plaintiffs must prove that they were "victims" of Defendant's violation of § 2252(a)(4)(B). 18 U.S.C. § 2255(a).

### 1. Issue Preclusion

Plaintiffs contend that the doctrine of issue preclusion bars Defendant from relitigating whether Plaintiffs are "victims" of his violations because that question was already decided in Plaintiffs' favor during the criminal restitution proceedings.

#### i.    Estoppel Under 18 U.S.C. § 3664(l)

Plaintiffs contend that 18 U.S.C. § 3664(l) estops Defendant from "disputing any essential facts established by his criminal convictions" in the related criminal case, including whether Plaintiffs are "victims" of his violations. (ECF No. 75-1 at 16.) Plaintiffs contend that Defendant cannot now argue that he "did not knowingly possess images of [Plaintiffs] as minors engaged in sexually explicit conduct" because the Court found that Defendant possessed Plaintiffs' images at the criminal restitution proceedings. (ECF No. 75-1 at 16.) Accordingly, Plaintiffs contend, Plaintiffs' status as victims is an "essential fact established by [Defendant's] criminal convictions" under § 3664(l). *Id.* at 15–16.

In response, Defendant contends that § 3664(l) does not preclude him from litigating Plaintiffs' victim status in this civil action because the "restitution order on which [Plaintiffs] rely was grounded in evidence not part of the criminal conviction itself." (ECF No. 90 at 8.) Defendant contends that the only "essential allegation" to his conviction was possession of devices "containing images of child pornography, not the possession of the

13

specific images or thumb drives tied to Plaintiffs." *Id.* Defendant further contends that the jury's verdict in his criminal proceeding "did not establish possession of the particular images or thumb drives" tied to Plaintiffs because those files "were never admitted into evidence at trial and were not before the jury." *Id.*

18 U.S.C. § 3664(l) provides that:

A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

18 U.S.C. § 3664(l).

Interpreting a statute with almost identical language to 18 U.S.C. § 3664(l), the Eleventh Circuit stated that a convicted criminal defendant "is barred from challenging in a later proceeding only those facts underlying the criminal offense that were necessarily decided by the jury's verdict . . . [C]ollateral estoppel [] would not apply to those facts supporting the restitution order . . . that were not part of the essential allegations underlying the criminal conviction." *United States v. Satterfield*, 743 F.2d 827, 838 (11th Cir. 1984), *abrogated on other grounds by, United States v. Watkins*, 13 F.4th 1202 (11th Cir. 2021).

Here, the jury found beyond a reasonable doubt that Defendant "knowingly possessed at least one matter that [Defendant] knew contained visual depictions of minors engaged in sexually explicit conduct" and that he "knew the visual depictions contained in the matters were of minors engaged in sexually explicit conduct." (Criminal ECF No. 196 at 19 (jury instructions given in Defendant's criminal trial regarding the elements of 18 U.S.C. § 2252(a)(4)(B)); *see also* Criminal ECF No. 198 (jury verdict finding Defendant "guilty" of § 2252(a)(4)(B)).) The jury never determined whether the images possessed by Defendant depicted Plaintiffs. Nor did the jury view the images depicting Plaintiffs at trial. (*See* Criminal ECF Nos. 193–95 (list of trial exhibits); Criminal ECF Nos. 152 at 5, 170 at 2 n.2 (discussing stipulations that described sexual content of images instead of showing images to jury).) Instead, the Court found by a preponderance of the evidence during the criminal restitution proceedings that "[e]ach of the individuals seeking restitution were

14

23-cv-00644-WQH-DEB

identified in material possessed by Defendant" and "each individual is a 'victim' entitled to restitution." (Criminal ECF No. 240 at 3.) Accordingly, Plaintiffs' identity was not an "essential allegation" of Defendant's § 2252(a)(4)(B) conviction. Thus, § 3664(l) does not estop Defendant from disputing Plaintiffs' victim status in this civil action.

#### ii.    Common Law Issue Preclusion

Plaintiffs also argue that the common law doctrine of issue preclusion bars Defendant from litigating Plaintiffs' victim status in this civil action. (ECF No. 75-1 at 16.) Plaintiffs contend that Defendant "actually litigated" and had a "full and fair opportunity to litigate" the issue of Plaintiffs' victim status in his criminal proceedings because he filed a brief opposing restitution (Criminal ECF No. 234), objected to paying restitution at his sentencing hearing (Criminal ECF No. 265 at 18), stated that he intended to appeal his restitution order in his notice of appeal to the Ninth Circuit (Criminal ECF No. 248), and filed a motion to reconsider the Court's restitution order (Criminal ECF No. 298). (ECF No. 75-1 at 17–19.)

Defendant contends that applying issue preclusion to bar him from litigating Plaintiffs' victim status in this action would unfairly prejudice him because he "reasonabl[y] reli[ed] on the restitution order's finality." (ECF No. 89-2 at 22–23;[5] ECF No. 91 at 10–11.) Specifically, Defendant contends that he made the "strategic decision" not to contest the $12,000 restitution order before the Ninth Circuit because of the restitution order's "limited scope and the significant cost and complexity of appellate review," instead choosing to focus on "broader issues related to the underlying conviction." (ECF No. 89-2 at 22; ECF No. 91 at 10.) Defendant contends that he made that choice "without notice that Plaintiffs, having secured restitution for the 'full amount' of their losses . . . , would later seek $450,000 in liquidated damages plus attorney fees under 18

---

[5] In light of Defendant's pro se status, the Court liberally construes his papers and considers arguments made in his own MSJ (ECF No. 89) and other filings when evaluating Plaintiffs' MSJ. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants . . . .") (citations omitted).

15

U.S.C. § 2255 for the same injuries, images, and conduct." (ECF No. 89-2 at 22.) Defendant contends that had he "anticipated this high-stakes civil suit, the restitution order would have been fully challenged, including the evidentiary basis for possession [and] victim identity." *Id.* at 23.[6]

As discussed in Section IV(A)(1), for issue preclusion to apply, the parties must have had a "full and fair opportunity to litigate the issue" in the prior proceedings. *Snoqualmie*, 8 F.4th at 864 (citing *Janjua*, 933 at 1065). To determine if a party had a full and fair opportunity to litigate the issue, "the court must consider the parties' incentives to litigate in the two actions." *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). "If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action." *Id.* (citations omitted).

Several courts of appeals have found that "findings made in a criminal sentencing proceeding ordinarily should not have preclusive effect in a subsequent civil case." *Id.*; *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 305 (2d Cir. 1999) ("[T]he incentive to litigate a sentencing finding is frequently less intense, and certainly more fraught with risk, than it would be for a full-blown civil trial."); *see also United States v. Real Prop. Located at Section 18, Twp. 23, Range 9, Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake, Olympic Nat. Park, Grays Harbor Cty., Wa.*, 976 F.2d 515, 517–19 (9th Cir. 1992) (finding that issue preclusion did not bar criminal defendant from litigating property's character in subsequent civil forfeiture proceeding because property's character was not element of guilty plea for drug manufacturing offense).

Here, Defendant took some steps to litigate Plaintiffs' victim status in his criminal proceedings. He filed a Brief in Opposition to Restitution (Criminal ECF No. 234) and

---

[6] Defendant further contends that applying issue preclusion would violate his rights under the Due Process Clause because "18 U.S.C. § 3509(m) strictly limited Defendant's access to the alleged images" in the criminal proceedings. (ECF No. 90 at 23–24.) The Court declines to reach this argument because, as discussed below, it finds that issue preclusion does not apply.

23-cv-00644-WQH-DEB

included restitution in his Notice of Appeal to the Ninth Circuit (Criminal ECF No. 248). However, he did not "vigorously contest" the issue. *Maciel*, 489 F.3d at 1023. Defendant did not mention restitution at all in his Ninth Circuit briefing, instead choosing to attack his underlying conviction. At his sentencing and restitution hearings, Defendant noted his objection to restitution but offered no argument on the issue. (*See* Criminal ECF No. 265 at 18; Criminal ECF No. 266 at 4.) And although he filed a Motion for Reconsideration of the Restitution Order (ECF No. 298), he only did so after Plaintiffs filed the instant civil action.

"[A] criminal defendant will often choose not to challenge sensitive issues during sentencing for any number of reasons . . . ." *Monarch*, 192 F.3d at 305. Defendant was sentenced to 300 months in custody and lifetime supervised release. (Criminal ECF No. 238.) The Court concludes that Defendant "had good reason" to focus his arguments before this Court and the Ninth Circuit on challenging the conviction underlying this lengthy sentence, instead of the $12,000 restitution award. *See Maciel*, 489 F.3d at 1023. Accordingly, he "should be entitled to relitigate" restitution issues in this civil action. *Id.*

Additionally, courts have declined to apply issue preclusion when "the amount in controversy in the first action was so small in relation to the amount in controversy in the second that preclusion would be plainly unfair . . . [F]ew litigants would spend $50,000 to defend a $5,000 claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159 (2015) (quotations and citations omitted); *see also Eureka Fed. Sav. & Loan Ass'n v. Am. Casualty Co. of Reading, Pa.*, 873 F.2d 229, 233 (9th Cir. 1989) (citations omitted) ("[D]iscrepancies in amounts at issue between two actions may make application of collateral estoppel inappropriate."). Here, the Court ordered Defendant to pay $12,000 in criminal restitution. In this subsequent civil action, Plaintiffs seek $450,000, plus attorney's fees and pre-judgment and post-judgment interest. (FAC at 5.) The substantial difference between these two amounts counsels against applying issue preclusion. The doctrine of issue preclusion does not bar Defendant from litigating the issue of Plaintiffs' victim status in this civil action.

23-cv-00644-WQH-DEB

### 2. *Evidence of Plaintiffs' Victim Status*

In the alternative, in the event that the Court does not apply issue preclusion, Plaintiffs contend that they "have proven all elements of § 2255 liability and no material facts are in dispute." (ECF No. 93 at 8.) The Court analyzes each element of Plaintiffs' § 2255 claim.

#### a. Identity

Plaintiffs contend that they "have established their identities as victims pictured in [Defendant's] collection of CSAM through the declarations of their counsel and designated representative." (ECF No. 75-1 at 21.) In addition to the filings in Defendant's criminal proceedings, Plaintiffs rely on a declaration from "designated representative" Carol L. Hepburn (ECF No. 75-2 ("Hepburn Decl.")) to prove that Plaintiffs were depicted in the material possessed by Defendant.

In her declaration, Ms. Hepburn states that she is an attorney who has "represented victims of child pornography crimes since 2008." (Hepburn Decl. ¶¶ 2–3.) She states that she has served as designated representative for each of the Plaintiffs for many years and that she is familiar with their appearance after personally meeting with each of them several times. *Id.* ¶¶ 6, 10, 11. Ms. Hepburn states that she has conducted many evidence reviews pursuant to 18 U.S.C. § 3509(m)(3) of the CSAM "series" depicting each of the Plaintiffs, is familiar with the images in each of those series, and recognizes Plaintiffs being depicted in the CSAM images based on her knowledge of Plaintiffs' appearances. *Id.* ¶¶ 8, 10, 11.

Ms. Hepburn describes the "established law enforcement protocol" governing her representation of Plaintiffs. *Id.* ¶ 12. For several years, she has received notifications from the Department of Justice's ("DOJ") Victim Notification Service ("VNS") "concerning prosecutions for child pornography violations" involving Plaintiffs' images. *Id.* ¶ 13. She states that she received VNS notices that each of the Plaintiffs' images were "found as a part of the investigation" in Defendant's criminal prosecution. *Id.* As part of her representation of Plaintiffs in Defendant's restitution proceedings, she states that she "conducted an evidence review on [Plaintiffs'] behalf pursuant to 18 U.S.C. § 3509(m)(3)

23-cv-00644-WQH-DEB

to review the particular images which formed a part of the basis of the prosecution of [Defendant]." *Id.* ¶ 15.

Ms. Hepburn states that, during the July 20, 2020 evidence review in the United States Attorney's Office in San Diego, she "viewed child sex abuse material files which were labeled as a part of the *Rosenow* Criminal Case." *Id.* Ms. Hepburn discusses three images she viewed during the evidence review, describes their sexual content in detail, and states that she recognized each of them as depicting one of the three Plaintiffs. *Id.* ¶¶ 16–18.

In support of a motion for summary judgment, a party may support its assertion that facts are not genuinely disputed by "citing to particular parts of materials in the record," including depositions, affidavits, and declarations made on personal knowledge and setting out facts that would be admissible in evidence at trial. Fed. R. Civ. P. 56(c). In her declaration, Ms. Hepburn describes what she personally witnessed during the evidence review and testifies that the relevant images depict Plaintiffs, based on her personal knowledge of Plaintiffs' appearance and of the CSAM series depicting them, gained from her years of representing them. The Court finds that Plaintiffs have met their initial burden of establishing that no genuine dispute of fact exists with regard to Plaintiffs' identity. *See Anderson*, 477 U.S. at 256.

Defendant raises several objections to the Hepburn Declaration. First, he contends that the Hepburn Declaration is hearsay because "[i]t relies on what law enforcement and NCMEC purportedly told her and what the AUSA explained [to] her during a July 2020 evidence review." (ECF No. 90 at 23.) Defendant contends that the Hepburn Declaration is insufficient to prove Plaintiffs' identity because it "cannot substitute for forensic or law enforcement confirmation" and Ms. Hepburn "did not examine forensic hash values, metadata, or chain-of-custody logs, and she lacks technical qualifications to authenticate or verify digital evidence." *Id.* at 17, 23. In response, Plaintiffs contend that they are not required to submit an affidavit from a law enforcement officer or forensic examiner. (ECF No. 93 at 8.) They contend that "NCMEC is the forensic examiner of choice for law

enforcement." *Id.* at 9. Plaintiffs further contend that, as their designated representative, Ms. Hepburn "would be notified when and *only* when images of known child pornography series depicting Plaintiffs are detected by NCMEC in support of ongoing criminal investigations." (ECF No. 93 at 5.)

The Court finds that Defendant has failed to adequately meet his burden of "designat[ing] specific facts showing that there is a genuine issue for trial" with respect to Plaintiffs' identity. *Celotex Corp.*, 477 U.S. at 324 (quotations omitted); *see "Amy" v. Curtis*, No. 19-cv-02184-PJH, 2021 WL 1391463, at *6, 8 (N.D. Cal. Apr. 13, 2021) (rejecting defendant's hearsay argument and finding declarations from parents of plaintiffs in § 2255(a) action sufficient to establish plaintiffs' identity at summary judgment stage, based on parents' personal knowledge). The Court analyzes the sufficiency of Ms. Hepburn's identity verifications of each of the three Plaintiffs in more detail below.

### i. Lily

Ms. Hepburn states that she has represented Lily "of the 'Vicky' CSAM series" since 2008 and has met with her in person and virtually many times. (Hepburn Decl. ¶ 6.) She states that she has reviewed "Lily's unredacted CSAM images [herself] during 18 U.S.C. § 3509(m)(3) evidence reviews" many times. *Id.* ¶ 7–8. Ms. Hepburn avers that "[i]n those pictures I have recognized the young woman who I first met in 2008 and who I have identified as Lily as the child depicted in the 'Vicky' series materials." *Id.* ¶ 8.

As part of the § 3509(m)(3) evidence review she conducted in the criminal restitution proceedings, Ms. Hepburn states that she viewed a video file from the "Vicky" series with the same file name listed in the NCMEC Child Identification Report forming the basis of the criminal case against Defendant. *Id.* ¶ 16. Ms. Hepburn states that she witnessed the video displaying a child of about 10 years of age, who was "clearly recognizable as Lily" because "her face and profile was fully visible in the video." *Id.* ¶ 16. The Court finds the Hepburn Declaration sufficient for a jury to find Lily's identity by a preponderance of the evidence. Defendant offers no evidence to rebut Ms. Hepburn's identification of Lily. The Court concludes that no genuine issue of material fact exists regarding Lily's identity.

23-cv-00644-WQH-DEB

## ii. Sarah

Ms. Hepburn states that she has represented "Sarah of the 'Marineland' series" since 2014 and has met with her in person multiple times. (Hepburn Decl. ¶ 10.) Ms. Hepburn avers that she is familiar with Sarah's "Marineland" images because has viewed those images many times in § 3509(m)(3) evidence reviews and "identified Sarah as the child in these materials." *Id.* Ms. Hepburn declares that she "informed [her]self as to the facts in the underlying prosecution of the producer of [Sarah's] images and acquainted [her]self with the content of the images which are part of [Sarah's] series." *Id.* She states that, as part of her evidence review in Defendant's criminal proceedings, she viewed a still image from the "Marineland" series with the same file name listed in the NCMEC Child Identification Report forming the basis of the criminal case against Defendant. *Id.* ¶ 17.

Defendant contends that the Hepburn Declaration does not sufficiently identify Sarah because it confirms that the still image Ms. Hepburn reviewed did not depict the subject child's face. (ECF No. 90 at 17–18, 22.) Plaintiffs contend that Ms. Hepburn sufficiently identified Sarah as being in the image because "the image Ms. Hepburn viewed as Sarah's designated representative had the same file name as the files listed as being from the 'Marineland' series in the NCMEC Child Identification Report." (ECF No. 93 at 9.)

Plaintiffs offer Ms. Hepburn's sworn statement that she is familiar with Sarah's images from the Marineland series and that she viewed one such image as part of the § 3509(m)(3) evidence review in Defendant's criminal case. (Hepburn Decl. ¶¶ 10, 17.) Additionally, the Court found twice in Defendant's criminal proceedings that "[e]ach of the individuals seeking restitution"—Plaintiffs in this civil action—"were identified in the material possessed by Defendant," which qualified them as "victims" of Defendant's offense of conviction. (Criminal ECF Nos. 240, 305.) The Court finds that Plaintiffs have met their initial burden of establishing Sarah's identity in the relevant CSAM image. Defendant fails to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). Accordingly, the Court concludes that no genuine dispute of material fact exists regarding Sarah's identity.

23-cv-00644-WQH-DEB

### iii. Pia

Ms. Hepburn states that she has represented Pia since 2016, has met her in person several times, and has seen photos of her many times. (Hepburn Decl. ¶ 11.) She states that she has "conducted many evidence reviews" under § 3509(m)(3) of images and videos of Pia from the "Sweet Sugar" (also known as "Sweet White Sugar") CSAM series and has "identified Pia as the child in the materials" through her "distinctive appearance" and the "common clothing and settings which are a part of the images and videos." *Id.*

Ms. Hepburn declares that, as part of her evidence review in the related criminal proceedings, she viewed "one video which was comprised of a series of stills, all of which depicted Pia." *Id.* ¶ 18. She states that the file names of those images contained the same names listed in the NCMEC Child Identification report. *Id.* Ms. Hepburn states that "[t]he video showed Pia's full face" and she was "able to identify Pia as the child in the files shown to me by the AUSA from the *Rosenow* Criminal Case" due to her "distinctive appearance." *Id.* The Court finds the Hepburn Declaration sufficient for a jury to find Pia's identity by a preponderance of the evidence. Defendant offers no evidence to rebut Ms. Hepburn's description.

The Court concludes that no genuine dispute of material fact exists as to the identity of all three Plaintiffs and grants Plaintiffs' MSJ (ECF No. 75) as to that issue.

### b. Sexually Explicit Conduct

Plaintiffs argue that the Hepburn Declaration establishes that the images depicting Plaintiffs and possessed by Defendant depicted "sexually explicit conduct." (ECF No. 75-1 at 26–27.) Defendant contends that Plaintiffs fail to meet their burden of proving sexually explicit conduct because "[n]o forensic report or law enforcement affidavit confirms that the files Plaintiffs rely on meet § 2256's statutory criteria." (ECF No. 90 at 22.)

An element of Defendant's violation of 18 U.S.C. § 2252(a)(4)(B) is that the materials he possessed depicted a minor engaged in "sexually explicit conduct." 18 U.S.C. section 2256 defines "sexually explicit conduct" using an enumerated list of specific sex acts. The Court assesses whether Plaintiffs sufficiently prove that their images depicted

sexually explicit conduct within the meaning of § 2256. In her declaration, Ms. Hepburn provides detailed descriptions of the sex acts taking place in the relevant images, which the Court summarizes below. Defendant does not offer evidence to rebut Ms. Hepburn's characterization of the conduct depicted in the relevant images.

### i. Lily

Defendant contends that the Hepburn Declaration's description of the video depicting Lily is "ambiguous and contradictory" because it describes the video file "as depicting Lily performing an act at approximately 35 seconds while simultaneously characterizing the video as a compilation showing different sexual content," which "underscore[s] the unreliability of [Ms. Hepburn's] identification." (ECF No. 90 at 18; *see also* ECF No. 91 at 8.)

Ms. Hepburn states that the video is a compilation which "begins showing multiple segments" of a particular sexual act involving a minor. (Hepburn Decl. ¶ 16.)[7] She states that, about 35 seconds into the video, she viewed a child of about 10 years of age, whom she identified as Lily, involved in a different kind of sexual act. *Id.*

Defendant's objection to the Hepburn Declaration lacks merit because Ms. Hepburn describes the video as a "compilation *which begins* showing multiple segments" of a particular sexual act. (Hepburn Decl. ¶ 16 (emphasis added).) This statement is consistent with Ms. Hepburn's description of the depiction of Lily appearing later in the compilation. The Court finds that Ms. Hepburn's description suffices to prove that the video of Lily depicted her engaged in "sexually explicit conduct." *See* 18 U.S.C. § 2256(2)(A)(i).

---

[7] In this Order, the Court references matters detailed in documents filed under seal. Paragraphs 16–19 of the Hepburn Declaration are filed under seal for the benefit of Plaintiffs because those paragraphs contain detailed descriptions of the CSAM depicting Plaintiffs. (*See* ECF Nos. 83, 73.) The Court reviewed the unredacted version of these paragraphs but will not lay out the details here, in order to protect Plaintiffs' privacy.

23-cv-00644-WQH-DEB

### ii. *Sarah*

Ms. Hepburn states that the still image depicting Sarah from the "Marineland" series depicted a sexual act involving a minor and provides a detailed description of the act. (Hepburn Decl. ¶ 17.) The Court finds Ms. Hepburn's description sufficient to prove that the image of Sarah depicted sexually explicit conduct. *See* 18 U.S.C. §§ 2256(2)(A)(i), (v).

### iii. *Pia*

Defendant contends that the "Sweet Sugar" file "linked to Pia was deleted and incomplete," which renders the Court unable to "independently determine whether it contained qualifying sexual content." (ECF No. 90 at 22.)

Ms. Hepburn states that the images of Pia were sexually suggestive and depicted sexual acts and provides detailed descriptions of the acts. (Hepburn Decl. ¶ 18.) The Court finds this description sufficient to prove that the images depicting Pia displayed sexually explicit conduct. *See* 18 U.S.C. §§ 2256(2)(A)(iii), (v).

### c. Defendant's Possession

Plaintiffs contend that they have adequately established that Defendant possessed child pornography depicting Plaintiffs. (ECF No. 75-1 at 27–28.) Plaintiffs contend that law enforcement, NCMEC, and their counsel "have followed the well-established process" of confiscating CSAM, identifying victims, notifying the victims' designated representative, and showing the images to the designated representative for review. *Id.* at 28. Defendant contends that Plaintiffs fail to prove possession because they have not shown (1) that he knowingly possessed the thumb drives labeled QSD15 and QSD16 and (2) that the thumb drives contained Plaintiffs' images. In response, Plaintiffs contend that evidence from Defendant's criminal proceedings establishes his possession of the QSD15 and QSD16 thumb drives. (ECF No. 93 at 9–10.)

### i. *Possession of QSD15 and QSD16*

Plaintiffs contend that "[l]aw enforcement and NCMEC identified" files depicting Plaintiffs on two thumb drives, labeled QSD15 and QSD16 by law enforcement. (ECF No. 93 at 4.) Plaintiffs contend that no genuine dispute of fact exists as to whether Defendant

knowingly possessed these thumb drives because he stipulated to possessing QSD16 in his criminal trial and QSD15 was seized by law enforcement from Defendant's home office, right next to where they seized QSD16. *Id.* Plaintiffs further contend that Defendant stipulated at trial that QSD16 contained CSAM. *Id.* Defendant contends that Plaintiffs fail to prove knowing possession of the thumb drives because QSD15 and QSD16 "were located in shared spaces of a jointly occupied home" and "mere proximity or shared access does not establish constructive possession." (ECF No. 90 at 20.)

The Court does not reach the question of whether Plaintiffs sufficiently establish that Defendant possessed QSD15 and QSD16 because, as discussed below, it finds that Plaintiffs fail to adequately connect the thumb drives to Plaintiffs' images with admissible evidence.

### ii. Connection Between QSD15 and QSD16 and Plaintiffs' Images

Defendant contends that Plaintiffs fail to prove that he possessed their images because "[n]o stipulation or trial evidence tied [the thumb drives labeled] QSD15 or QSD16 to files from the 'Vicky,' 'Sweet Sugar,' or 'Marineland' series." (ECF No. 90 at 19.) Defendant contends that although the Court found that he possessed Plaintiffs' CSAM in the criminal restitution proceedings, the Court's finding "relied on NCMEC reports and the government's briefing[,] rather than independent forensic or law-enforcement testimony." (ECF No. 91 at 22.) Defendant contends that without "admissible, file-specific evidence" that "connect[s] Plaintiff's depictions to devices knowingly possessed by Defendant, summary judgment is improper." (ECF No. 90 at 19, 23; ECF No. 91 at 28.)

In response, Plaintiffs contend that "[s]creenshots from a NCMEC 'Forensic Report' show that hash values confirmed the existence of three files" from Plaintiffs' CSAM series located on Defendant's "QSD15 and QSD16 thumb drives." (ECF No. 93 at 8–9.) Plaintiffs further contend that "[t]he only way Ms. Hepburn received notice was because those images were detected on [Defendant's] devices." *Id.* at 9.

23-cv-00644-WQH-DEB

To support their contention that Plaintiffs' images were located on the QSD15 and QSD16 thumb drives possessed by Defendant, Plaintiffs rely on screenshots shown in the United States' Response to Defendant's Objection to Restitution ("Government's Restitution Brief") (Criminal ECF No. 237) filed in Defendant's criminal restitution proceedings. *Id.* at 8–9. The Government's Restitution Brief states that "[t]he NCMEC Report, included as Exhibit A of the United States' Sentencing Memorandum, identifies the file path name for each of the three depictions of the three minor victims seeking restitution." (Criminal ECF No. 237 (citing Criminal ECF No. 229-1).)

The Government's Restitution Brief includes a screenshot "of the file paths on each of the devices for the three [CSAM] depictions." *Id.* The screenshot displays a chart with the left-hand column, titled "Victim," listing "Pia (of the Sweet Sugar Series)," "Vicky (now referred to as Lily)," and "Marineland (Sarah)." *Id.* at 2–3. The right-hand column is titled "File Path from Forensic Report" and displays the file name, file path, file type, hash values, and other identifying information about each of the files, including which devices each file was found on. *Id.* The chart identifies the "evidence object" of Pia's file as "QSD15" and of Lily's and Sarah's files as "QSD16." *Id.*

The Government's Restitution Brief does not explain how the screenshot was created. *See id.* The NCMEC Report referenced by the government does not contain the screenshot. (Criminal ECF No. 229-1.) The NCMEC Report lists file names and matches them to several CSAM series but does not mention QSD15 or QSD16, nor otherwise indicate the devices upon which these files were found. *Id.*

Additionally, in her declaration, Ms. Hepburn states that she "received [VNS] notices [] advising that [Plaintiff's] images were found as a part of the investigation" in Defendant's criminal case. (Hepburn Decl. ¶ 13.) She states that she "conducted an evidence review on [Plaintiff's] behalf pursuant to 18 U.S.C. § 3509(m)(3) to review the particular images which formed a part of the basis of the prosecution of [Defendant]," during which she viewed CSAM "files which were labeled as a part of the *Rosenow* Criminal Case." *Id.* ¶ 15.

23-cv-00644-WQH-DEB

Plaintiffs also rely on the fact that Ms. Hepburn received VNS notices from the DOJ in support of their contention that the CSAM files Ms. Hepburn reviewed originated from Defendant's devices. (ECF No. 93 at 8–9; *see also* Hepburn Decl. ¶¶ 13, 15.) The VNS notices state that law enforcement identified "the following victim(s) (or potential victims) . . . during the investigation" of Defendant's criminal case. (ECF No. 103-3 at 1.) They provide logistical updates on the status of Defendant's criminal proceedings, such as the timing of hearings and appeals. *See id.* at 1–73. However, they do not provide any information about the specific CSAM files, Defendant's devices, or the process through which law enforcement recovered the files. *See id.*

Plaintiffs do not offer any other evidence that Defendant possessed the specific CSAM files depicting them. In § 2255 cases, courts have found similar evidence insufficient to establish a defendant's possession of specific CSAM files by a preponderance of the evidence at the summary judgment stage. *See Curtis*, 2021 WL 1391463, at *10–12; *cf. Amy v. Anderson*, No. 5:16-CV-212 (MTT), 2018 WL 2768876, at *5, *10 (M.D. Ga. June 8, 2018).

For instance, in *Curtis*, the plaintiffs submitted three types of evidence to support their contention that the defendant possessed their CSAM images: (1) documents from the defendant's criminal prosecution, (2) an NCMEC report, and (3) a declaration from an expert who conducted an evidence review at the office of a federal law enforcement agency, Homeland Security Investigations ("HSI"). 2021 WL 1391463, at *10–11. A district court in the Northern District of California found the evidence from the criminal prosecution insufficient to establish possession because although the defendant admitted at his plea hearing to possessing child pornography generally, he did not admit to possessing the plaintiffs' specific images. *Id.* at *11. The court likewise found that the NCMEC report failed to establish possession because it lacked "any declaration or other showing that CSAM depicting each individual plaintiff was found on defendant's computer." *Id.* Finally, the court found the expert declaration insufficient to establish possession because "there is no confirmation in the declaration that the files reviewed by [the expert] indeed originated

23-cv-00644-WQH-DEB

from or matched those from defendant's computer," even though the expert stated that the HSI agent showed him digital material "containing folders with titles consistent with defendant's computer media." *Id.* The court denied the plaintiffs' motion for summary judgment, stating:

> [I]n the absence of a declaration or deposition testimony from the person who conducted the forensic examination of defendant's computer, or someone with personal knowledge of the contents of his computer, that each of these images relied on by plaintiffs, rather than just the series of which they are known to be included in the past, none of the plaintiffs establish that defendant possessed CSAM depicting them.

*Id.* at *12. The *Curtis* court also noted that the plaintiffs "received notice through the VNS that their images were among those possessed by defendant" but still found insufficient evidence of possession. *Id.* at *1, *11–12.

By contrast, in *Lily v. Keller*, the plaintiffs submitted a declaration from a detective who "conducted a forensic analysis and submitted data to NCMEC." *Lily v. Keller*, No. 6:25-cv-00078-MTK, 2026 WL 752708, at *1–2 (D. Or. Mar. 17, 2026). The detective's declaration stated that law enforcement officers executed a search warrant on the defendant's property, the defendant admitted to possessing CSAM, and the defendant "showed officers his computer and storage devices." *Id.* at *1. The detective stated that after he conducted the forensic analysis of materials found on Defendant's devices, NCMEC analyzed the same CSAM and identified each series. *Id.* The detective further stated that he met with the plaintiffs' designated representative and "provided sanitized, true, and accurate copies of Defendant's CSAM files" to her. *Id.* at *2. A district court in the District of Oregon found that the plaintiffs had "produced sufficient evidence to establish possession" and granted summary judgment for the plaintiffs on their § 2255 claim. *Id.* at *5, *8.

This case more closely resembles *Curtis* than *Keller*. Here, unlike in *Keller*, Plaintiffs fail to offer a declaration or deposition testimony from anyone who conducted a forensic examination of the QSD15 and QSD16 thumb drives, or from anyone stating that the thumb drives contained the same CSAM files discussed in the NCMEC report. The

28

only evidence Plaintiffs submit that directly links Plaintiffs' CSAM files to the QSD15 and QSD16 thumb drives is a screenshot contained in a brief submitted by government counsel during Defendant's criminal restitution proceedings. (Criminal ECF No. 237 at 2–3; *see also* ECF No. 93 at 8–9.)

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact [at the summary judgment stage] cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment; *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) (citation omitted) ("Plaintiffs, as the parties seeking admission of most of the evidence at issue, bore the burden of proof to show its admissibility."). Here, Plaintiffs made no such showing. While it may be permissible for a court to rely on representations made by government attorneys as officers of the court in the criminal restitution context,[8] Plaintiffs provide no legal support for the proposition that the government's assertions in a criminal sentencing memorandum are admissible to prove the essential elements of a civil claim for the truth of the matter asserted therein.

Without considering the above-mentioned screenshot, the Court finds Plaintiffs' remaining evidence insufficient to establish that the thumb drives in Defendant's possession contained Plaintiffs' CSAM files. Neither the Hepburn Declaration nor the VNS notifications adequately link Plaintiffs' CSAM files to the specific devices possessed by Defendant. The Court concludes that Plaintiffs fail to adequately establish that Defendant

---

[8] The Federal Rules of Evidence do not apply in criminal sentencing proceedings, but they do apply in civil trials. Fed. R. Evid. 1101; *see also United States v. Franklin*, 18 F.4th 1105, 1114 (9th Cir. 2021) (citations omitted).

23-cv-00644-WQH-DEB

possessed their CSAM images. Plaintiffs' MSJ (ECF No. 75) is denied as to the possession element of Plaintiffs' § 2255 claim.[9]

## V. DEFENDANT'S MSJ

Defendant moves for summary judgment on the sole grounds that the doctrines of issue preclusion, claim preclusion, and judicial estoppel prevent Plaintiffs from suing him under 18 U.S.C. § 2255. (ECF No. 89-2 at 3.)

### A. Issue Preclusion: "New Evidence" of Privity[10]

Defendant contends that issue preclusion bars Plaintiffs from bringing this civil action because "Plaintiffs' claims arise from the same operative facts adjudicated in Defendant's prior criminal sentencing proceeding, and the record conclusively demonstrates that Plaintiffs were in privity with the government" during the restitution proceedings. (ECF No. 89-2 at 2.)

Defendant's MSJ relies on "new evidence" obtained during civil discovery to support his privity argument: (1) the Government's Sentencing Memorandum and the attached NCMEC report (Criminal ECF No. 229-1), (2) DOJ's Victim Notification Letter notifying Ms. Hepburn of Defendant's prosecution (ECF No. 88 at 2–4), (3) excerpts from Defendant's criminal Pre-Sentence Report summarizing the victim's restitution requests, *id.* at 6–8, and (4) "extensive correspondence between Plaintiffs' counsel and government paralegals before, during, and after sentencing" (*see* ECF No. 60). (ECF No. 89-2 at 6.)[11]

---

[9] Defendant further contends that Plaintiffs fail to prove that he knowingly possessed Pia's images because "the forensic record shows these files were deleted or located only in unallocated space." (ECF No. 90 at 19; ECF No. 91 at 20–21.) The Court declines to reach this argument because it finds Plaintiffs' evidence insufficient to establish Defendant's possession of Plaintiffs' images, generally.

[10] Defendant contends that claim preclusion bars Plaintiffs' § 2255 claims for "duplicative civil relief" against him. (ECF No. 89-2 at 1–4.) For the same reasons as discussed above in Section IV(A)(2), the Court finds that res judicata does not apply and denies Defendant's MSJ (ECF No. 89) to the extent that it relies on res judicata.

[11] Defendant seeks judicial notice of these documents in Defendant's Motion for Judicial Notice of Documents in Support of Summary Judgment ("Defendant's Request for Judicial Notice"). (ECF No. 89.) The Court grants Defendant's unopposed request for judicial notice.

Plaintiffs contend that this evidence is not new because Defendant has known that the government conferred with Plaintiffs' counsel since his criminal restitution proceedings took place in 2020. (ECF No. 100 at 5.)

Defendant also filed a Supplement to Defendant's MSJ contending that "recently obtained evidence" bolsters his privity argument. (ECF No. 99.)[12] He relies on emails between Plaintiffs' counsel and the prosecutor in his criminal case, which appear to request restitution and a victim finding for Sarah and discuss how to electronically locate the sentencing memorandum. (ECF No. 99 at 11–15.) Defendant contends that these communications "underscore[] Plaintiffs' active litigation partnership with the DOJ, confirming privity and adequate representation in the criminal proceedings." *Id.* at 2; *see also* ECF No. 101 at 1, 8–9.; ECF No. 104 at 3–4.

Specifically, Defendant contends that privity existed between Plaintiffs and the government in his restitution proceedings because Plaintiffs "conceded" that "the [Assistant] U.S. Attorney conferred with counsel for the victims, in an effort to resolve the restitution issues without a hearing, urging Plaintiffs to accept a lower restitution award, which Plaintiffs agreed to do." (ECF No. 89-2 at 7, 11 (citing ECF No. 72 at 13).) Defendant contends that this "active negotiation" means that Plaintiffs were in privity with the government. *Id.* at 11; *see also* ECF No. 101 at 5–6, 8–9. Defendant also notes that the government "requested restitution exclusively for Plaintiffs, not other identified victims, aligning its efforts with their specific claims." (ECF No. 89-2 at 12.) He contends that the government's "selective advocacy" on behalf of Plaintiffs establishes privity. *Id.* In response, Plaintiffs contend that 18 U.S.C. § 3771(a)(5) provides them a right to confer with the government during restitution proceedings, and that doing so does not create privity. (ECF No. 102 at 2.) Plaintiffs further contend that the cited communications are

---

[12] Plaintiffs ask the Court to strike the Supplement to Defendant's MSJ (ECF No. 99) for failure to comply with the Federal Rules of Civil Procedure. (ECF No. 102.) The Court declines to strike the document because, as discussed below, it denies Defendant's MSJ (ECF No. 89) in its entirety, even considering the Supplement.

"typical" of victims in a criminal CSAM proceeding and "further highlight Plaintiffs' limited participation in the underlying criminal case." (ECF No. 100 at 6.)

Defendant filed yet another brief contending that "new admissions" bolster his privity argument: Defendant's Second Supplement to Summary-Judgment Motion and Reply to Plaintiffs' Opposition to Motion for Reconsideration. (ECF No. 114.) He contends that new evidence demonstrates that "restitution was determined after direct, in-person conferences between [Plaintiffs'] counsel and the Department of Justice" that "occurred entirely off the written record." *Id.* at 2, 4. Defendant contends that this evidence "conclusively establish[es] that all proximate losses . . . were already presented, resolved, or waived under § 2259" and "shows both active participation and substantial alignment of interests, establishing privity." *Id.* at 2, 7, 8, 9, 10, 11.

Defendant also filed a fourth brief regarding his privity argument: Defendant's Notice of Supplemental Submission Regarding Plaintiffs' Privilege Assertion and Privity. (ECF No. 118.) He contends that "Plaintiffs' newly-asserted claim of 'privilege' over restitution-related documents . . . confirms the privity relationship with the government in the restitution proceeding. *Id.* at 1 (citing ECF No. 60). Defendant contends that "asserting privilege over documents . . . disclosed to the Department of Justice requires establishing a common legal interest with the Government—an admission that directly establishes privity." *Id.* at 3; *see also id.* at 4, 6–8, 13–14.

Defendant further contends that Plaintiffs' "failure to pursue mandamus relief" from the Restitution Order under 18 U.S.C. § 3771(d)(3) "confirms their acceptance of the outcome." (ECF No. 89-2 at 16; *see also* ECF No. 101 at 3–4.) He contends that 18 U.S.C. § 3664(j)(2)'s "offset mechanism reflects Congress's intent to prevent duplicative recoveries." (ECF No. 89-2 at 19; *see also* ECF No. 104 at 5; ECF No. 114 at 12.) Defendant also contends that "allowing Plaintiffs to seek expanded damages under § 2255 after previously negotiating a restitution award undermines the finality of that restitution," given that 18 U.S.C. § 2259 provides for criminal restitution in the "full amount of the victim's losses." (ECF No. 89-2 at 19; *see also* ECF No. 101 at 2–3.)

23-cv-00644-WQH-DEB

As discussed in more detail in Section IV(A)(1), the Court finds that Plaintiffs were not in privity with the government during the criminal restitution proceedings. Defendant's "new evidence" regarding communications between Plaintiffs' counsel and the government during the restitution proceedings does not change the Court's conclusion. Defendant notes that the government "urg[ed] Plaintiffs to accept a lower restitution award, which Plaintiffs agreed to do." (ECF No. 89-2 at 11 (citing ECF No. 72 at 13).) Plaintiffs sought to achieve a higher restitution award but the government asked them to reduce the requested award, presumably in an effort to conserve government and judicial resources by avoiding a contested hearing. (*See* ECF No. 100 at 7.) This fact cuts against a finding of privity because it underscores that the victims' interests and the government's interests in restitution proceedings "are not sufficiently similar for a finding of privity." *Hesketh*, 828 F.3d at 172.

The Court finds that 18 U.S.C. § 2259 does not preclude Plaintiffs' civil suit. Section 2259, which provides for mandatory restitution to victims of child exploitation offenses, directs courts to award restitution in the "full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). However, the statute also states that the "court shall order" such restitution "*in addition to* any other civil or criminal penalty authorized by law." *Id.* § 2259(a) (emphasis added). Section 2255(a) provides for another civil penalty authorized by law.

The Court concludes that Defendant fails to establish that Plaintiffs and the government were in privity during his criminal restitution proceedings. Accordingly, he fails to satisfy the elements of issue preclusion. The Court denies Defendant's MSJ Judgment (ECF No. 89) as to his issue preclusion argument.

**B. Judicial Estoppel**

Defendant contends that "Plaintiffs' inconsistent positions regarding the preclusive effect of the prior criminal restitution proceeding warrant the application of judicial estoppel." (ECF No. 89-2 at 23; *see also* ECF No. 99 at 7; ECF No. 101 at 10–11; ECF No. 104 at 4; ECF No. 114 at 14.) Defendant states that Plaintiffs simultaneously contend that (1) the doctrine of issue preclusion bars Defendant from litigating Plaintiffs' victim

23-cv-00644-WQH-DEB

status in this civil action and (2) issue preclusion does not prevent Plaintiffs from bringing this civil suit in the first instance. (ECF No. 89-2 at 23–24.) Defendant contends that this "duplicitous stance triggers judicial estoppel" because "Plaintiffs' initial disavowal of the criminal proceeding's preclusive effect contrasts starkly with their current reliance on its findings to lock in Defendant's liability." *Id.* at 24.

"Judicial estoppel is an equitable doctrine based on the principle that, once a party takes a certain position, it 'may not thereafter . . . assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *CFPB v. CashCall, Inc.*, 135 F.4th 683, 692 (9th Cir. 2025) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Courts examine three factors to determine whether judicial estoppel applies. First, the "party's later position must be clearly inconsistent with its earlier position." *New Hampshire*, 532 U.S. at 749 (quotations and citations omitted). Second, the court should consider "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Third, the court should determine "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citations omitted).

Defendant's judicial estoppel argument fails at this test's first prong because Plaintiffs' positions on issue preclusion are not "clearly inconsistent." *Id.* Plaintiffs first contend that issue preclusion does not bar them from bringing their § 2255 claim—in other words, that Defendant cannot weaponize issue preclusion *against Plaintiffs*. Plaintiffs also contend that issue preclusion prevents Defendant from relitigating the issue of victim status in this subsequent civil proceeding—Plaintiffs' attempt to weaponize issue preclusion *against Defendant*. The Court finds these two arguments consistent and denies Defendant's MSJ (ECF No. 89) as to his judicial estoppel argument.

Because Defendant fails to demonstrate that he is entitled to judgment as a matter of law, the Court denies his MSJ (ECF No. 89) in its entirety.

## VI.    ADDITIONAL MOTIONS

Before filing his MSJ (ECF No. 89), Defendant filed a Motion to Dismiss the SAC. (ECF No. 67.) In that motion, Defendant contends that "[t]his action is barred under the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) because Plaintiffs' claims arise from the same operative facts and alleged harms that were fully adjudicated" in Defendant's restitution proceedings. *Id.* at 2. The Court considered and rejected these arguments when it denied Defendant's MSJ (ECF No. 89). *See* Section V(A), *supra*. Defendant's Motion to Dismiss the SAC (ECF No. 67) is denied. Defendant's Motion for Judicial Notice in Support of Motion to Dismiss the SAC (ECF No. 68), Motion for Leave to File Oversized Motion to Dismiss (ECF No. 69), and Motion to File Document Under Seal in Support of Motion to Dismiss (ECF No. 70) are denied as moot.

Before filing his MSJ (ECF No. 89), Defendant also filed a Motion Under Rule 56(d) to Postpone Consideration of Plaintiffs' Summary Judgment Motion or, in the Alternative, for Leave to Supplement Response ("Motion for Leave"), seeking (1) to defer the Court's ruling on Plaintiffs' MSJ until certain discovery issues were resolved, or (2) leave to file a supplemental response to Plaintiffs' MSJ. (ECF No. 80.) Since filing that motion, Defendant has filed several supplemental briefs regarding the pending MSJs (ECF Nos. 75, 89). He also stated that the discovery dispute is "fully resolved and . . . no further discovery is required" on the relevant issues. (ECF No. 118 at 5.) The Court denies Defendant's Motion for Leave (ECF No. 80) as moot.

## VII.    CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 75) is granted with respect to the "identity" and "sexually explicit conduct" elements of each Plaintiffs' § 2255 claim and denied in all other respects. Defendant's Motion for Summary Judgment (ECF No. 89) is denied in its entirety.

23-cv-00644-WQH-DEB

IT IS FURTHER ORDERED that the Court denies the following motions filed by Defendant: Motion to Dismiss the SAC (ECF No. 67), Motion for Judicial Notice in Support of Motion to Dismiss the SAC (ECF No. 68), Motion for Leave to File Oversized Motion to Dismiss (ECF No. 69), Motion to File Document Under Seal in Support of Motion to Dismiss (ECF No. 70), and Motion for Leave (ECF No. 80.)

IT IS FURTHER ORDERED that the Court sets the following deadlines: (1) the parties shall comply with the pre-trial disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) by April 28, 2026; (2) the parties shall meet remotely and take the action required by Civil Local Rule 16.1.f.4 by May 26, 2026; (3) Plaintiffs' counsel shall provide Defendant with the proposed pretrial order by June 12, 2026; and (4) the parties shall file the proposed pretrial order with the Court, including any objections to the other party's respective pretrial disclosures, by July 6, 2026. The Court will set a final pretrial conference to take place over Zoom following the receipt of the proposed pretrial order.

Dated:  March 26, 2026

Hon. William Q. Hayes
United States District Court

36

23-cv-00644-WQH-DEB